UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL WHYTE, an individual; DORION JACKETT, an individual; KANIUS HILL, an individual,<br><br>Plaintiffs,<br><br>v.<br><br>CITY OF SAN DIEGO, a municipality; SAN DIEGO POLICE DEPARTMENT OFFICER (badge # unknown), an individual; and DOES 1-25, inclusive,<br><br>Defendants. | Case No. 21cv1159-LAB-MDD<br><br>**ORDER GRANTING IN PART DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT [Dkt. 16]** |

On May 26, 2022, the Court dismissed Plaintiffs Michael Whyte, Dorion Jackett, and Kanius Hill's (collectively, "Plaintiffs") First Amended Complaint ("FAC") for failure to state claims of liability under *Monell v. Dept. of Social Services,* 436 U.S. 658, 690 (1978), against Defendants City of San Diego (the "City") and San Diego Police Department Officer Trevor Sterling ("Officer Sterling") (collectively, "Defendants"). The Court found that Plaintiffs' allegations of civil rights violations related to a June 2, 2020 traffic stop were merely conclusory legal statements that failed to support their claims brought under 42 U.S.C. § 1983. The Court granted Plaintiffs leave to amend their complaint to correct the deficiencies

as to those claims.

On June 16, 2022, Plaintiffs filed their Second Amended Complaint ("SAC"), alleging nine causes of action for violations of 42 U.S.C. § 1983, California Civil Code section 52.1, and for intentional infliction of emotional distress ("IIED"). Defendants now move to dismiss Plaintiffs' *Monell*, IIED, and section 52.1 claims, arguing that Plaintiffs have made conclusory allegations and provided insufficient facts to support their claims. For the reasons set forth herein, the Court finds that Plaintiffs have failed to correct the deficiencies identified in the Court's prior Order with respect to their *Monell* claims, and **GRANTS** Defendants' motion to dismiss as to Plaintiffs' fourth through seventh causes of action. The Court additionally **GRANTS** the motion to dismiss as to Plaintiffs' IIED claim and **DENIES** the motion as to their claim under § 52.1.

I.  **BACKGROUND**

On June 2, 2020, Jackett, Whyte, and Hill, "all three [of whom] are Black men," were driving along California State Route 94 in Jackett's Chevy Silverado when they were pulled over by Officer Sterling. (Dkt. 15, SAC at ¶¶ 1–2).[1] Jackett, who was driving, pulled over and stopped the vehicle. (*Id.* ¶ 3). Officer Sterling asked for Jackett's license and registration, as well as Hill's license, and asked them both to exit the vehicle. (*Id.* ¶¶ 4, 24). Jackett asked Officer Sterling why they were pulled over, and Officer Sterling informed him that he believed Plaintiffs were on their way to a protest in another part of town. (*Id.*). Officer Sterling also asked for Whyte's identification, but when Whyte informed him that his identification was in his wallet on the floor, Officer Sterling stated that he would shoot Whyte if he reached for it. (*Id.* ¶ 13). Officer Sterling then removed Whyte from the vehicle, (*id.* ¶ 15), and asked Jackett if he could search the vehicle, (*id.* ¶ 6). Jackett declined

---

[1] The allegations in the SAC are misnumbered, with allegations beginning at number "1" on both page 1 and page 3. The Court will refer to the paragraphs as they are numbered beginning on page 3 throughout the remainder of this Order.

but Officer Sterling proceeded to search both the vehicle and Jackett anyway. (*Id.*). As for Whyte, Officer Sterling removed him from the vehicle, placed him in handcuffs, rummaged through his pockets, and placed him in the back of his patrol car. (*Id.* ¶ 15). Plaintiffs were ultimately allowed to leave. (*Id.* ¶ 17).

On June 23, 2021, Plaintiffs filed this suit against Defendants for civil rights and state law violations related to the alleged traffic stop on June 2, 2020. (Dkt. 1). Their SAC, filed on June 16, 2022, asserts nine causes of action for violations of 42 U.S.C. § 1983 and section 52.1, and for IIED. Defendants now move to dismiss Plaintiffs' fourth through ninth causes of action.

## II.   LEGAL STANDARD

A Rule 12(b)(6) motion tests the sufficiency of a complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 547 (2007)). A claim is facially plausible when the factual allegations permit "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* While a plaintiff need not give "detailed factual allegations," a plaintiff must plead sufficient facts that, if true, "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 545.

"The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). Plausibility requires pleading facts, as opposed to conclusory allegations or the "formulaic recitation of the elements of a cause of action," *Twombly*, 550 U.S. at 555, which rise above the mere conceivability or possibility of unlawful conduct, *Iqbal*, 556 U.S. at 678–79; *Somers v. Apple, Inc.*, 729 F.3d 953, 959–60 (9th Cir. 2013). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not

suffice." *Iqbal*, 556 U.S. at 678. While a pleading "does not require 'detailed factual allegations,'" Rule 8 nevertheless "demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

### III.  ANALYSIS

#### A. *Monell* Liability

Plaintiffs' fourth through seventh causes of action attempt to impose liability on the City for violation of Plaintiffs' Fourteenth Amendment rights under 42 U.S.C. § 1983. They assert the following causes of action under a theory of *Monell* liability: (1) failure to properly screen and hire (Claim 4); (2) failure to properly train (Claim 5); (3) failure to properly supervise and discipline (Claim 6); and (4) custom, policy, or practice of making inappropriate and illegal traffic contacts without any reasonable suspicion or probable cause (Claim 7). (SAC ¶¶ 61–92).[2]

Under *Monell*, a municipality can only be held liable for injuries inflicted by its employees or officers if it somehow participated in the wrongdoing through its official rules, policy, custom, or practice. *See Monell*, 436 U.S. at 690–91. To establish *Monell* liability, a plaintiff must prove that: (1) the plaintiff "possessed a constitutional right of which he was deprived"; (2) the municipality had a policy; (3) the policy amounts to deliberate indifference to the plaintiff's constitutional right; and (4) the policy was the "moving force" behind or cause of the constitutional violation. *Dietrich v. John Ascuaga's Nugget*, 548 F.3d 892, 900 (9th Cir. 2008) (citing *Van Ort v. Est. of Stanewich*, 92 F.3d 831, 835 (9th Cir. 1996)). A municipality may not be held vicariously liable under § 1983 simply based on

---

[2] Once again, Plaintiffs bring their fourth through seventh causes of action against the City, David Nisleit, and the San Diego Police Department ("SDPD"). But Nisleit has been dismissed from this case, (Dkt. 8), and SDPD was never named as a defendant in the SAC. Therefore, the Court analyzes these claims as only against the City.

allegedly unconstitutional acts of its employees. *See Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 403 (1997); *Monell*, 436 U.S. at 691 ("[A] municipality cannot be held liable solely because it employs a tortfeasor."); *Jackson v. Barnes*, 749 F.3d 755, 762 (9th Cir. 2014). "The standard is deliberately high in these types of cases because applying a less demanding standard would circumvent the rule against *respondeat superior* liability of municipalities." *Abdi v. Cnty. of San Diego*, No. 3:18-CV-713-BEN-KSC, 2018 WL 6248539, at *4 (S.D. Cal. Nov. 29, 2018) (citing *Bd. of Cnty. Comm'rs*, 520 U.S. at 392).

In its prior Order, the Court found that, despite conclusory allegations otherwise, the FAC failed to sufficiently identify any unconstitutional custom, policy, or practice by the City that was the moving force behind the alleged violations of Plaintiffs' rights. (Dkt. 14 at 4–6). Nevertheless, the Court granted Plaintiffs the opportunity to amend their complaint to correct this deficiency and allege factual matter sufficient to support an inference that the alleged violation of Plaintiffs' rights was caused by the City's customs, practices, or policies, or that such customs, practices, or policies amounted to a deliberate indifference to Plaintiffs' rights. (*Id.* at 6). Plaintiffs have amended their complaint, and the Court now examines each of the challenged *Monell* claims in light of these new allegations.

### i. Failure to Properly Screen and Hire (Claim 4)

Plaintiffs fail to adequately plead their *Monell* cause of action for failure to properly screen and hire. The SAC states that the City, "as a matter of custom, practice, and policy, failed to adequately and properly screen and hire Defendant S[terling]," (SAC ¶ 62), and that the "lack of adequate screening and hiring practices by Defendants evince deliberate indifference to the rights of Plaintiffs and others in their position," (*id.* ¶ 65). But such a conclusory recitation of the elements of a *Monell* claim is insufficient to satisfy the pleading standard required under *Iqbal*, 556 U.S. at 678. Deliberate indifference in this context is only present "where adequate scrutiny of an applicant's background would lead a reasonable

policymaker to conclude that the plainly obvious consequence of the decision to hire the applicant would be the deprivation of a third party's federally protected right." *Bd. of Cnty. Comm'rs*, 520 U.S. at 411. Here, Plaintiffs merely make conclusory allegations that the City failed to adequately and properly screen and hire Defendant Sterling. (SAC ¶ 62). But Plaintiffs fail to provide any facts about the City's hiring practices or Officer Sterling's background to support an allegation that the City was "deliberately indifferent" in its screening and hiring process. *See Amaral v. City of San Diego*, No. 3:17-CV-2409-L-JMA, 2018 WL 3302987, at *3 (S.D. Cal. July 5, 2018). Plaintiffs' conclusory statements are insufficient to meet the pleading standard, and therefore the Court dismisses Plaintiffs' claim for failure to properly screen and hire. *See Iqbal*, 556 U.S. at 678.

### ii.  Failure to Properly Train (Claim 5)

Plaintiffs' fifth cause of action under § 1983 for failure to properly train must likewise be dismissed. To succeed on this theory, Plaintiffs must allege (1) inadequate training and (2) "deliberate indifference to the rights of persons with whom the [untrained employees] come into contact." *See Connick v. Thompson*, 563 U.S. 51, 61 (2011) (citation omitted) (bracket in original). In *Connick*, the Supreme Court explained,

> "'[D]eliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." Thus, when city policymakers are on actual or constructive notice that a particular omission in their training program causes city employees to violate citizens' constitutional rights, the city may be deemed deliberately indifferent if the policymakers choose to retain that program.

*Id*. at 62 (citations omitted). The need for training must be "so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." *City of Canton v. Harris*, 489 U.S. 378, 390 (1989). Absent

a single violation with a "highly predictable consequence," *Bd. of Cnty. Comm'rs*, 520 U.S. at 398, a pattern of similar constitutional violations is necessary to demonstrate deliberate indifference, *Connick*, 563 U.S. at 62 (citing *Bd. of Cnty. Comm'rs*, 520 U.S. at 409).

The City first argues that "Plaintiffs do not plead any facts about any deficiency in the police officers' training program." (Dkt. 16-1 at 9). But the SAC alleges that the City "failed to maintain adequate and proper training for police officers in the department necessary to educate the officers as to the Constitutional rights of arrestees; to prevent the excessive force and extra judicial punishment of potential arrestees by officers." (SAC ¶ 69). The Court finds this allegation sufficient to satisfy the first prong of the failure to train analysis.

The City next argues that Plaintiffs fail to "allege any facts indicating a policy or custom of excessive force on the part of the City's police department beyond the single instance alleged in the complaint." (Dkt. 16-1 at 9). In their opposition, Plaintiffs first point to the circumstances of the traffic stop alleged in the SAC, arguing that "the facts show that given Plaintiffs' unreasonable stop, search, and detainment, and the District Attorney's decision not to prosecute, Defendant Officer Sterling does not have the proper training in the standards required to make a proper arrest or otherwise perform a stop." (Dkt. 18 at 6). But the SAC makes no mention of any other similar incidents of discriminatory traffic stops and searches and, as the City points out, this singular incident is insufficient to provide notice of any custom, policy, or practice of unconstitutional conduct. *See Hendrix v. City of San Diego*, No. 3:20-CV-45-TWR-NLS, 2021 WL 3892671, at *8 (S.D. Cal. Aug. 11, 2021) ("A single employee who was inadequately trained is not enough; there must be a widespread practice.") (internal citations and quotation marks omitted); *Sales v. City of Tustin*, No. SACV1201834CJCMLGX, 2013 WL 12309309, at *2 (C.D. Cal. June 11, 2013) ("The fact that the Defendant Officers allegedly violated an individual's Constitutional rights on one occasion is not sufficient to show a

failure to train."); *Harris v. City of Clearlake*, 12-0864-YGR, 2013 WL 120965, at *5 (N.D. Cal. Jan. 8, 2013) ("The fact that Plaintiff was twice arrested and that no charges were ultimately brought does not state facts as to how the City inadequately trains its police officers regarding probable cause, nor does it rise to the level of sufficiently alleging how its arrest procedures themselves are faulty.").

Plaintiffs cite to four different studies and reports in their SAC in support of their argument that SDPD has an "unspoken policy" of discriminatory policing, and that Black people are more likely than others to be stopped by police in San Diego. These include a 2016 study conducted by San Diego State University ("SDSU"); a 2019 report published by NBC San Diego; the National Justice Database City Report published by the Center for Policing Equity; and an evaluation conducted by Police Scorecard. (SAC ¶¶ 27–35). They rely on these four studies/reports for the proposition that SDPD's widespread and well-known discriminatory policing practices are a direct result of Defendants' failure to train. But after taking a closer look at the specific allegations made about these studies/reports, the Court is unable to draw such a conclusion. For instance, the SAC alleges that the 2016 SDSU study showed that "Black and Hispanic people are more likely to be searched and questioned in the field after being stopped," (*id.* ¶ 27), while the 2019 story published by NBC San Diego reported that "Black people are five times more likely to be prosecuted for minor offenses," (*id.*). As for the National Justice Database City Report, the SAC alleges the report found that "Black people made up 14.8% of all people who experienced traffic stops from 2017-2020"; that once stopped, "Black people were searched 2.5 times as often as White people"; and that "Black people were subjected to force 5 times as often as White people per year on average." (*Id.* ¶ 28). Finally, the SAC alleges that the Police Scorecard evaluated policing practices in San Diego and concluded that "SDPD stopped black people at a rate more than 2x higher than white people and were more likely to search, arrest, and use force against black people during a stop." (*Id.* ¶ 32).

However, these allegations fall far short of the threshold needed to properly plead a failure-to-train theory. While these studies suggest that SDPD discriminates based on race and color with regard to traffic stops and prosecutions, none appears to touch on the issue of insufficient training of SDPD officers, nor do any suggest that insufficient training is what "actually caused" the constitutional violations alleged. *City of Canton*, 489 U.S. at 379 ("[T]he identified deficiency in the training program must be closely related to the ultimate injury. Thus, respondent must still prove that the deficiency in training actually caused the [constitutional violation]."); *see Giambastiani v. City of Santa Rosa*, No. 19-CV-02450-VC, 2019 WL 4409977, at *1–2 (N.D. Cal. Sept. 16, 2019) (holding "the County can be held liable only if the alleged constitutional violation was 'actually caused' by the subpar training"). Plaintiffs also allege that the "sheer number of similar studies put[] the City on notice their policies surrounding traffic stops of Black San Diegans is problematic, deficient, and inherently inadequate," (SAC ¶ 72), but such an allegation is conclusory, as it merely recites that the City was "put on notice," (*id.* ¶ 73). "Plaintiff[s] do[] not need to prove notice at this stage, but without more specific examples supported by at least some factual allegations, the Court cannot determine whether a pattern of violations existed to put the [City] on notice of its alleged failure to train." *Astorga v. Cnty. of San Diego*, No. 3:21-CV-463-BEN-KSC, 2022 WL 1556164, at *8 (S.D. Cal. May 17, 2022). Thus, none of the studies or reports support the theory that the City was deliberately indifferent to the alleged inadequate training identified in the SAC.

Because the SAC fails to allege facts showing the City was "deliberately indifferent" to inadequate training, the Court finds Plaintiffs have again failed to plead a claim for *Monell* liability based on failure to train.

### iii.  Failure to Properly Supervise and Discipline (Claim 6)

Under § 1983, a supervisor can be held liable in his or her individual capacity "if there exists either (1) his or her personal involvement in the constitutional

deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989) (citation omitted). The allegations of supervisor liability in the SAC remain entirely conclusory. No specific facts are alleged that would support a plausible inference that any supervisor—whether a direct supervisor of Officer Sterling or otherwise—was personally involved in the incident or that there was any causal connection between Officer Sterling's conduct and the unconstitutional conduct of any supervisor. Accordingly, the Court dismisses Plaintiffs' sixth cause of action.

### iv. Custom, Policy, or Practice (Claim 7)

Plaintiffs' final *Monell* claim must also be dismissed. The SAC alleges that the City "maintained a custom, policy, or practice within the meaning of *Monell*, of making inappropriate and illegal traffic contacts despite lacking reasonable suspicion or probable cause," which allegedly led to "using excessive force, falsely arresting, and otherwise burdening citizens whom [*sic*] object to unlawful profiling, harassment, and discriminatory actions by San Diego Police Officers." (SAC ¶ 88).

Here, Plaintiffs do not refer to an actual recorded municipal policy, nor do they adequately allege a practice "so persistent and widespread that it constitutes a permanent and well settled city policy." *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996) (internal citation and quotation marks omitted). The SAC cites to four studies and reports concerning SDPD's allegedly discriminatory policing practices, but as discussed previously, reference to these studies and reports alone is insufficient to demonstrate the City's deliberate indifference to the constitutional rights of the persons with whom its police officers are likely to come into contact. Plaintiffs critically "fail[] to plead specific facts supporting th[e] alleged policies, how they cause Plaintiff[s] harm, and how the policies amounted to deliberate indifference." *Franco v. City of San Diego*, No. 3:19-CV-82-BEN-BLM, 2019 WL 6134640, at *5 (S.D. Cal. Nov. 18, 2019) (citations omitted). Plaintiffs

once again fail to provide sufficient underlying facts to push their allegations past legal conclusions.

A complaint can't survive with only "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678; see *Somers v. Apple, Inc.*, 729 F.3d 953, 959–60 (9th Cir. 2013). Because the SAC fails to allege factual matter sufficient to support an inference that the alleged violation of Plaintiffs' rights was caused by the City's customs, practices, or policies, or that such customs, practices, or policies amounted to a deliberate indifference to Plaintiffs' rights, the seventh cause of action against the City is dismissed.

\*   \*   \*

Whether to grant leave to amend rests in the sound discretion of the trial court. *See Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir. 1995). The Court considers whether leave to amend would cause undue delay or prejudice to the opposing party, and whether granting leave to amend would be futile. *See Sisseton-Wahpeton Sioux Tribe v. United States*, 90 F.3d 351, 355 (9th Cir. 1996). When a plaintiff has previously been granted leave to amend, "the district court's discretion to deny leave to amend is particularly broad." *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1007 (9th Cir. 2009).

Having already granted leave to amend, and given Plaintiffs' repeated failure to cure their pleading failures, the Court is not convinced that Plaintiffs can plead additional facts to sufficiently establish their *Monell* claims. The Court therefore **DISMISSES** Plaintiffs' fourth through seventh causes of action for *Monell* liability **WITHOUT LEAVE TO AMEND**.

### B. Intentional Infliction of Emotional Distress (Claim 8)

Defendants request dismissal of Plaintiffs' eighth cause of action for intentional infliction of emotional distress ("IIED"). To succeed on an IIED claim, a plaintiff must demonstrate: (1) extreme and outrageous conduct by the defendant

with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff suffered severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct. *See Christensen v. Superior Court*, 54 Cal. 3d 868, 903 (1991). Outrageous conduct requires that the conduct be so extreme "as to exceed all bounds of that usually tolerated in a civilized community." *Id*. (internal citations and quotation marks omitted).

Here, Plaintiffs claim that Defendant Sterling "engaged in outrageous conduct with an intent to or a reckless disregard of the probability of causing Plaintiffs to suffer emotional distress." (SAC ¶ 94). But other than a formulaic recitation of the elements of an IIED claim, the SAC offers no factual allegations to plausibly support such a claim. For instance, the SAC makes no effort to describe whether or how Defendants specifically intended to cause emotional distress or otherwise acted with reckless disregard. Accordingly, the Court **GRANTS** Defendants' motion to dismiss the IIED claim.

### C. Violation of Cal. Civ. Code § 52.1 (Claim 9)

Plaintiffs' ninth cause of action alleges violations of the Bane Act under section 52.1 against the City and Officer Sterling. Section 52.1 provides that "any individual whose exercise or enjoyment of rights secured by the Constitution . . . has been interfered with" by "threats, intimidation or coercion," may bring a civil action on his or her own behalf. Cal. Civ. Code § 52.1(b)–(c). Plaintiffs' § 52.1 claim rests upon their allegations that first, Defendants violated their First and Fourth Amendment rights through excessive force and interference with their participation in a protest and second, that these rights were interfered with by threats, intimidation, and coercion. (SAC ¶¶ 99–102).

Defendants argue that Plaintiffs fail to plead a claim under § 52.1 because "Plaintiffs failed to specifically allege *any* 'threat, intimidation or coercion,' and certainly none which are separate and independent from the alleged wrongful

conduct (the alleged stop, detention, and search) constituting the alleged constitutional rights violation." (Dkt. 16-1 at 14 (emphasis in original)). But the Ninth Circuit and California Court of Appeal have explicitly rejected that argument, "explaining that the text of [§ 52.1] does not require that the offending 'threat, intimidation or coercion' be independent from the constitutional violation alleged." *Rodriguez v. Cty. of Los Angeles*, 891 F.3d 776, 802 (9th Cir. 2018) (internal quotation marks omitted); *Reese v. Cnty. of Sacramento*, 888 F.3d 1030, 1043 (9th Cir. 2018) ("[T]he Bane Act does not require the 'threat, intimidation or coercion' element of the claim to be transactionally independent from the constitutional violation alleged.") (citing *Cornell v. City & Cnty. of San Francisco*, 225 Cal. Rptr. 3d 356, 382 (Cal. Ct. App. 2017), *as modified* (Nov. 17, 2017)). Thus, "[w]here, as here, an arrest is unlawful *and* excessive force is applied in making the arrest, there has been coercion 'independent from the coercion inherent in the wrongful detention itself'—a violation of the Bane Act." *Lyall v. City of Los Angeles*, 807 F.3d 1178, 1196 (9th Cir. 2015) (emphasis in original) (quoting *Bender v. Cty. of Los Angeles*, 159 Cal. Rptr. 3d 204, 213 (Cal. Ct. App. 2013)).

Plaintiffs have pleaded a cognizable claim under § 52.1. Accordingly, Defendants' motion to dismiss Plaintiffs' § 52.1 claim is **DENIED**.[3]

---

[3] In their Reply, Defendants also argue that "Plaintiffs failed to plead that Officer Sterling had a specific intent to violate their rights"—a necessary element of the Bane Act. (Dkt. 19 at 7). However, the Court declines to consider arguments raised for the first time in a reply brief, as it deprives Plaintiffs of the opportunity to respond to the argument. *See Autotel v. Nev. Bell Tel. Co.*, 697 F.3d 846, 852 n.3 (9th Cir. 2012) ("[A]rguments raised for the first time in a reply brief are waived.") (alteration in original) (quoting *Turtle Island Restoration Network v. U.S. Dep't of Com.*, 672 F.3d 1160, 1166 n.8 (9th Cir. 2012)); *United States v. Boyce*, 148 F. Supp. 2d 1069, 1085 (S.D. Cal. 2001), *as amended* (Apr. 27, 2001) (collecting cases declining to consider arguments first raised in reply briefs and "noting that considering arguments raised for first time in [a] reply brief deprives [the] opposing party of adequate opportunity to respond") (citations omitted), *aff'd*, 36 F. App'x 612 (9th Cir. 2002).

## IV. CONCLUSION

The Court **GRANTS** Defendants' Motion to Dismiss as to Plaintiffs' fourth, fifth, sixth, and seventh causes of action, which are **DISMISSED WITHOUT LEAVE TO AMEND**. Additionally, Plaintiffs' IIED claim is **DISMISSED**, but given that this is the first opportunity the Court has had to test the sufficiency of this claim, the Court grants Plaintiffs **LEAVE TO AMEND** this claim. Finally, the Court **DENIES** Defendants' Motion to Dismiss the Bane Act claim.

Plaintiffs are granted leave to amend their IIED claim by **December 20, 2022**.

**IT IS SO ORDERED.**

Dated: December 7, 2022

Honorable Larry Alan Burns
United States District Judge